WARGO, APPELLANT, *v.* THE SUPT. OF BUILDING AND LOAN
ASSNS., DEPT. OF COMMERCE, APPELLEE.

(No. 6984—Decided February 13, 1963.)

*Messrs. Fontana, Ward & Kaps* and *Mr. William W. Brown,*
for appellant.

*Mr. William B. Saxbe* and *Mr. Mark McElroy,* attorneys
general, and *Mr. Victor S. Krupman,* for appellee.

DUFFEY, J. This is an appeal on questions of law from a
judgment of the Court of Common Pleas of Franklin County,
Ohio. The action is one in declaratory judgment to determine
the right to $1,200 now in possession of the Superintendent of
Building and Loan Associations. The facts of record are those
admitted by the pleadings or established by stipulated docu-
ments and a stipulation of the parties.

The Ohio Superintendent of Building and Loan Associa-
tions, acting pursuant to Chapter 1157 of the Revised Code, took
control and possession of the operation and assets of the Empire
Savings and Loan Company for the purpose of liquidation. He
proceeded properly under the supervision of the Court of Com-
mon Pleas of Cuyahoga County. Sometime later the superin-
tendent transferred the liquidation proceedings back to the as-

sociation. Thereafter, certain embezzlements by an employee of the association were discovered. See Application to Sell, paragraph 5. The superintendent then resumed control of the liquidation pursuant to Chapter 1157, Revised Code. The only facts of *record* with respect to the embezzlement are found in the journal entry ordering payment of the ninth dividend. It is there stated that one Stella Pickins "while an employee of The Empire Savings and Loan Company" embezzled $37,041.54.

On April 18, 1956, the superintendent applied for authority to sell "all the assets of the association." Detailed lists of mortgages, collateral and miscellaneous loans, and claims of the association were attached. On July 30, 1956, the sale having been authorized, the court accepted the bid of the appellant. The entry states:

"Ordered, that the bid of Edward H. Wargo in the sum of $5,825.00 for the purchase of all the assets known and unknown of the Empire Savings and Loan Company, including but not limited to the assets listed in Schedules A and B annexed to the petition herein with the exception of Item 4 of Schedule A, be and the same hereby is accepted and approved, * * *."

Item 4 of Schedule A is not in controversy in this suit. The order further directed execution of all the necessary instruments in order to give Wargo "* * * such right of title and/or interest as the Division of Building and Loan Associations, Department of Commerce, state of Ohio, may now have in the assets aforesaid of the Empire Savings and Loan Company by virtue of the said Empire Savings and Loan Company being in the possession and custody and control of the superintendent for the purposes of liquidation as provided by law."

On September 12, 1956, the sale was completed. An instrument was executed which provided that:

The superintendent does "hereby sell, assign, and transfer to Edward H. Wargo, any and all choses in action, claims and judgments, rights, privileges, titles, easements, or interest in any and all other property, if any, either real or personal, or mixed, belonging to the said The Empire Savings and Loan Company of Cleveland, Ohio, or the Liquidator thereof, except: * * *."

Two specific exceptions are stated in this instrument. One covered all choses in action, rights or interests with respect to

matters disposed of prior to the date of sale. The other covered cash on hand and the purchase price in the Wargo sale.

On October 22, 1956, the Cuyahoga criminal court made an entry reciting that Stella Pickins had pleaded guilty to the charge of embezzlement and ordering that she be placed on probation. One condition of probation was that "she makes restitution."

Stella Pickins has since made restitution in part. She paid $1,200 into court, and the court, in turn, transmitted this money to the superintendent. In a journal entry dated July 1, 1958, the liquidation court ordered that the money received from Stella Pickins (then some $395) and all future such money be placed with the general funds held by the superintendent for distribution to depositors of The Empire Savings and Loan Company as liquidating dividends.

Wargo brought the present suit in declaratory judgment against the superintendent to determine the right to that $1,200. There are many additional facts stated in the briefs. Some of these are heavily relied upon in the legal arguments of the parties. However, the decision must be based on the facts of record, and no consideration can be given to extraneous matters not of record. In particular, the statements that a dividend had been declared, that the embezzlement was of dividend money by the forging of checks, discussions between Wargo and the superintendent's office prior to the sale, etc., are not of record and cannot be considered. On the facts of record, there was an embezzlement of association money by an employee, Stella Pickins, and a subsequent assignment as set forth above.

Wargo was not a party to the liquidation proceedings, and is not bound by the order of July 1, 1958. Under Section 1157.02, Revised Code, he is not entitled to intervene in the liquidation proceeding. He is not a creditor, depositor, shareholder, or claimant of any kind against Empire. Rather, his right is based upon an alleged title acquired by purchase. Since he could not become a party to the liquidation proceeding, and the superintendent having possession of the money, the suit was properly brought in Franklin County.

The appellee admits that the civil obligation of an embezzler is an assignable interest. However, it is contended that the claim here belonged to the depositors (or shareholders) and

not to Empire. This contention is based on facts concerning an alleged dividend declaration which are not of record, and it must be rejected.

It is also contended that the assignment was not intended to include this particular claim. The wording of the journal entries and of the instrument of sale and assignment are very broad and all-inclusive. In addition, each contains specific exceptions. The civil claim against the embezzler does not fall within those exceptions. Under the general rules of construction it is most apparent that the assignment instrument does cover the claim.

Finally, it is contended that depositors have a "constructive trust" in the money. To the extent that "constructive trust" applies to the proceeds of Empire's claim against Pickins, the trust would be in favor of Wargo. He purchased the claim and as assignee and owner by purchase he is entitled to any payments made in discharge of that claim. He paid over $5,000 for the assets which, as the superintendent stated in the Application for Authority to Sell, had a highly dubious value. Certainly the value in 1956 of this particular claim against a woman convicted of embezzlement was problematical. The fact that with the passage of time it acquired in hindsight some substantial value is hardly of significance here.

At the time of the probation order in the criminal proceedings, the superintendent was entitled to any payments made as the titleholder of Empire's assets under Chapter 1157, Revised Code. He transferred his interest, and thereby that of the depositors, to Wargo.

It is our conclusion that the $1,200 paid by Pickins and in the possession of the superintendent rightfully belongs to the appellant.

The judgment of the Court of Common Pleas is reversed. A judgment entry so declaring and ordering payment may be submitted to this court.

*Judgment reversed.*

DUFFY, P. J., concurs.

BRYANT, J., dissenting. I find that I am in disagreement with the conclusions reached by my colleagues in this case.

In the first place, on the pleadings, the answer places in issue paragraphs six and eight of the petition, placing upon plaintiff the burden of proving the allegations with respect to the money paid by Stella B. Pickins as restitution. Counsel for plaintiff in his statement of the case makes the following statement:

"The position of Stella Pickins should be brought to the court's attention at this point. Stella Pickins was the manager of Empire prior to the time Empire began liquidation proceedings. During the period of the employment of Stella Pickins the directors of Empire authorized a dividend payable to Empire depositors. This dividend was to be made in the form of cash and payable by way of check drawn from the assets of Empire. The checks were made out by Stella Pickins and some were mailed to the shareholders or depositors. However, not all of the checks reached their proper destination. Stella Pickins forged the names on some of the checks prior to their mailing and the checks were cashed by her. The proceeds, some $37,000.00, were appropriated by Stella Pickins and converted to her own use. She was later apprehended, pleaded guilty to a charge of embezzlement and was placed on probation pending restitution being made to Empire. The journal entry of judgment against Stella Pickins forms a part of the stipulations in this case and was taken on October 22, 1956, a date subsequent to the time when the superintendent took possession and control of Empire."

This statement of facts is rejected by the majority opinion as not supported by the record. I observe that it is not disputed in the answer brief of the appellee. Some support arises from the journal entry in the criminal case, *State* v. *Stella B. Pickins, a. k. a. Stella Davidson*, No. 65746, Common Pleas Court, Cuyahoga County, Ohio, in which, in the caption, reference is made to the charges in the indictment in the following language:

"Indictment—Forgery, w.c. Uttering and Publishing Forged Instrument, w.c., Embezzlement, w.c. misappl. of funds, w.c. Forgery, w.c., Utt. & publ. forg. instr., w.c. embezzlement, w.c. misapplication of funds, w.c. forgery, w.c. altering and publishing. w.c. Embezzlement, w.c. abstracting and misapplication of funds."

But even if the statements are not supported by the rec-

ord, neither is the contention that the victim or victims of the forging, uttering and publishing a forged instrument, embezzlement, etc., were either the Empire Savings and Loan Company or the liquidator. On this count alone I favor affirming the court below because of failure of proof in this case.

Another reason why the judgment of the court below should be affirmed is that all questions as to the disposition of the money received from Stella B. Pickins were litigated and decided in a journal entry of the Court of Common Pleas of Cuyahoga County, Ohio, dated July 1, 1958, part of which journal entry is as follows:

"That the applicant is holding in a separate fund the sum of $395.00 as restitution money received from Stella Pickins since October 22, 1956. That Stella Pickins was convicted in criminal case No. 65746 and on October 22, 1956, was ordered by a judge of this court to make restitution for money embezzled while an employee of The Empire Savings and Loan Company in the amount of $37,041.54 and given a five (5) year suspension of sentence and placed on probation. * * *

"And it is further ordered and adjudged that the sum of $395.00 held as restitution money from Stella Pickins in a separate fund and all future monies received from this source be transferred and placed with the general funds held by said special deputy of The Empire Savings and Loan Company, *for distribution to depositors of the said Empire Savings and Loan Company as liquidated dividends.*" (Emphasis added.)

That judgment entry stands unreversed and was made by a court having full jurisdiction to make the order. This alone is sufficient to warrant the affirmance of the judgment of the court below.

I am not unmindful of the broad language used in the assignment in this case, which is dated September 12, 1956, and was apparently filed on October 24, 1956.

Because of the foregoing reasons, in my opinion, the judgment of the court below should be affirmed.